ACCEPTED
01-14-00868-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
2/5/2015 4:19:04 PM
CHRISTOPHER PRINE
CLERK

## No. 01-14-00868-CR

### In the
### Court of Appeals for the First District of Texas
### At Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
2/5/2015 4:19:04 PM
CHRISTOPHER A. PRINE
Clerk

---

Cause No. 2014V-0074
In the 155th District Court
Of Austin County, Texas

---

## EX PARTE STUART WHEELER

---

## APPELLEE'S BRIEF

---

Brandy N. Robinson
One East Main Street
Bellville, Texas 77418
(979) 865-5933
Texas Bar No. 24051688

## ORAL ARGUMENT REQUESTED

**STATEMENT REGARDING ORAL ARGUMENT**

Appellee requests oral argument pursuant to Texas Rule of Appellate Procedure 39.7.

## IDENTITY OF PARTIES AND COUNSEL

Appellee: State of Texas

Trial and Appellate Counsel for the State:

Brandy N. Robinson
Assistant Criminal District Attorney
One East Main Street, 3rd Floor
Bellville, Texas 77418
(979) 865-5933

Trial and Appellate Counsel for Applicant:

Mark W. Bennett
917 Franklin St., 4th Floor
Houston, TX 77002

Phil Baker
P.O. Box 628
La Grange, TX 78945
(979) 968-3783

Trial Judge: The Honorable Jeff Steinhauser

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT................................2

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . .. . . . . . . . . 3

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . 4

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . .. . . . . . 6

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . .. . . . 9

ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . .. . . . .10

The trial court properly denied habeas relief because the section of Texas Penal Code § 33.021 by which Applicant is charged is constitutional.

STATEMENT OF THE FACTS ........................................11

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . .12

RESPONSE TO POINT OF ERROR ONE...............................14
The remaining subsections of Texas Penal Code § 33.021 should be upheld under a rational basis standard of review, as they restrict unprotected criminal conduct rather than constitutionally protected speech. Moreover, the statute is narrowly tailored to serve a compelling governmental interest.

    A. Strict Scrutiny Applies to Laws Restricting Speech,
       Not Conduct
    B. Subsection (b) Regulated Speech, but Subsection (c) Regulates
       Conduct
    C. Subsection (c) Restricts Criminal Solicitation
    D. Subsection (d) Does Not Change the Standard of Review
       *Alternatively, Any Unconstitutional Portions of Subsection (d)*
       *Should Be Struck*
    E. Section (C) Survives Rational Basis Review

F. Texas Penal Code § 33.021 Is Not Overly Broad
    1. *The Statute is Narrowly Tailored*
    2. *The Statute Serves a Compelling Governmental Interest*

RESPONSE TO POINT OF ERROR TWO...................................35
The remainder of Texas Penal Code § 33.021 survives any vagueness challenge, as the plain meaning of the word "solicitation" in the statute is facially clear.

    A. Applicant Cannot Raise a New Vagueness Ground
       on Appeal
    B. Subsections (c) and (d) Are Not Impermissibly Vague

RESPONSE TO POINT OF ERROR THREE.................................40
The Dormant Commerce Clause does not apply to § 33.021. Alternatively, the statute survives the Dormant Commerce Clause balancing test, as any potential burden on commerce does not outweigh the legitimate local interest in preventing solicitation of minors for illegal sexual acts.

    A. The Dormant Commerce Clause Does Not Apply
    B. Subsection (c) Does Not Restrict Commerce
    C. Texas Penal Code § 33.021 Passes the Pike Test

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..44

CERTIFICATES OF COMPLIANCE AND SERVICE . . . . . . . . . . . . . . . ..45

## INDEX OF AUTHORITIES

**Cases**

*Aaron v. State*, 161 Tex. Crim. 156 (Tex. Crim. App. 1954)--------------------38

*Am. Libraries Ass'n v. Pataki*, 969 F. Supp. 160 (S.D.N.Y. 1997) -----------40

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973)--------------------------------15, 29

*Bynum v. State*, 767 S.W.2d 769 (Tex. Crim. App. 1989) --------------------28

*Cameron v. Johnson*, 390 U.S. 611 (1968)---------------------------------------36

*Cardenas v. State*, 640 S.W.2d 291 (Tex. Crim. App. 1982)------------------24

*Cerda v. State*, 750 S.W.2d 925 (Tex. App.—Corpus Christi 1988) --------38

*Chaplinsky v. State of New Hampshire*, 315 U.S. 568 (1942) ----------------20

*Colten v. Kentucky*, 407 U.S. 104 (1972) -----------------------------------------36

*Connally v. Gen. Const. Co.*, 269 U.S. 385 (1926) -----------------------------36

*Duncantell v. State*, 230 S.W.3d 835 (Tex. App.—Houston [14th Dist.] 2007)---------------------------------------------------------------------------------------26

*Ely v. State*, 582 S.W.2d 416 (Tex. Crim. App. 1979) ----------------12, 14, 26

*Ex Parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013)----------------------passim

*Ex Parte Thompson*, 442 S.W.3d 325 (Tex. Crim. App. 2014) ---------------21

*Ex Parte Zavala*, 421 S.W.3d 227 (Tex. App.—San Antonio 2013, pet. ref'd.)-----------------------------------------------------------------------------------passim

*Frieling v. State*, 67 S.W.3d 462, (Tex. App.—Austin 2002) -------------20, 34

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) -----------------------------36

*In re Shaw*, 204 S.W.3d 9 (Tex. App.—Texarkana 2006, pet. ref'd.) -------27

*Maloney v. State*, 294 S.W.3d 613 (Tex. App.--Houston [1st Dist.] 2009, pet. ref'd.)-----------------------------------------------------------------------------------passim

*Mattias v. State*, 731 S.W.2d 936 (Tex. Crim. App. 1987)----------------------38

*McBurney v. Young*, 133 S. Ct. 1709 (2013)---------------------------------------43

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789 (1984) ------------------------------------------------------------------26

*New York v. Ferber,* 458 U.S. 747 (1982) --------------------------20, 27, 33, 34

*Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.,* 511 U.S. 93 (1994) ------------------------------------------------------------------41

*People v. Smith,* 347 Ill. App. 3d 446 (Ill. App. Ct. 2004) ------------------27, 35

*Pike v. Bruce Church, Inc.,* 397 U.S. 137 (1970)----------------------------------41

*Rath v. State,* 33 S.W. 142 (Tex. Crim. App. 1895) ----------------------------38

*Rodriguez v. State,* 93 S.W.3d 60 (Tex. Crim. App. 2002) --------------------14

*Rothstein v. State,* 267 S.W.3d 366 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd.)----------------------------------------------------------------36

*Sanchez v. State,* 995 S.W.2d 677 (Tex. Crim. App. 1999)--------------------20

*Santikos v. State,* 836 S.W.2d 631 (Tex. Crim. App. 1992)--------------15, 27

*Scott v. State,* 36 S.W.3d 240 (Tex. App.--Houston [1st Dist.] 2001, pet. ref'd) ------------------------------------------------------------------------31

*State v. Rosseau,* 396 S.W.3d 550 (Tex. Crim. App. 2013)--------------------27

*Tarlton v. State,* 93 S.W.3d 168 (Tex. App.--Houston [14th Dist.] 2002, pet. ref'd.)--------------------------------------------------------------------26

*Tisdale v. State,* 640 S.W.2d 409 (Tex. App.—San Antonio 1982, pet. ref'd.)------------------------------------------------------------------------31

*United States v. Ranson,* 942 F.2d 775 (10th Cir. 1991)----------------------31

*United States v. Salerno,* 481 U.S. 739 (1987)----------------------------------15

*United States v. Williams,* 553 U.S. 285 (2008) ----------------------------19, 28

*Valdez v. Valdez,* 930 S.W.2d 725 (Tex. App.—Houston [1st Dist.] 1996, no pet.) ------------------------------------------------------------------------36

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489 (1982)------------------------------------------------------------------------28

*Wren v. Texas Employment Com'n,* 915 S.W.2d 506 (Tex. App.--Houston
    [14th Dist.] 1995, no pet.) ------------------------------------------------------36

**Statutes**

Tex. Pen. Code Ann. § 15.03 (c) (Vernon 2012)----------------------------------38

Tex. Pen. Code Ann. § 21.02 (Vernon)--------------------------------------------21

Tex. Pen. Code Ann. § 21.11 (Vernon)--------------------------------------------21

Tex. Pen. Code Ann. § 22.011 (Vernon)-------------------------------------------21

Tex. Pen. Code Ann. § 22.021 (Vernon)-------------------------------------------21

Tex. Pen. Code Ann. § 33.021(a)(1)(A) (Vernon 2012) -----------------------30

Tex. Pen. Code Ann. § 33.021(b) (Vernon 2012)----------------------------- 16

Tex. Pen. Code Ann. § 33.021(c) (Vernon 2012) --------------------------passim

Tex. Pen. Code Ann. § 33.021(d) (Vernon 2012)-------------------------22, 33

Tex. Pen. Code Ann. § 43.02 (Vernon 2012) ----------------------------------23

Texas Penal Code § 33.021 (Vernon 2012)--------------------------------passim

Texas Penal Code § 43.02(a) (Vernon 2012)------------------------------------23

**Rules**

Tex. R. App. P. 9.4(i)(1) ----------------------------------------------------------45

Tex. R. App. P. 33.1----------------------------------------------------------------36

Tex. R. App. P. 33.1(a) ------------------------------------------------------------36

## STATEMENT OF THE CASE

The State indicted Stuart Wheeler, hereinafter referred to as "Applicant," under subsection (c) of Texas Penal Code § 33.021 for Online Solicitation of a Minor in Cause No. 2013R-0031. (CR 14). The defense filed its writ of habeas corpus. (CR 3). The trial court signed an order denying habeas relief. (CR 57). Applicant then filed notice of appeal. (CR 56).

## ISSUE PRESENTED

The trial court properly denied habeas relief because the section of

Texas Penal Code § 33.021 by which Applicant is charged is constitutional.

## STATEMENT OF THE FACTS

Applicant challenges the pure facial constitutionality of the statute, not the constitutionality as applied. Therefore, a statement of facts is inapplicable.

## SUMMARY OF THE ARGUMENT

The Texas Court of Criminal Appeals, in *Ex Parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013), examined Texas' Online Solicitation of a Minor statute, Texas Penal Code § 33.021. The Court held that subsection (b) of § 33.021 was unconstitutionally overbroad. *Ex Parte Lo*, at 14. However, the Court expressly stated that the remaining subsections were constitutional. *Ex Parte Lo*, at 16-17. Under the rational basis standard of review, Applicant has the burden to show the present statute has no reasonable construction which would render it constitutional. *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. 1979). As the Texas Court of Criminal Appeals has already found a reasonable construction which would render the statute constitutional, the statute must be upheld.

Further, Texas courts have specifically rejected Applicant's arguments of overbreadth and vagueness as to the remainder of § 33.021. *Ex parte Lo*, 424 S.W.3d 10; *Maloney v. State*, 294 S.W.3d 613, 626-629 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd.); *Ex Parte Zavala*, 421 S.W.3d 227, 231-232 (Tex. App.—San Antonio 2013, pet. ref'd.). These courts consistently held the remainder of the statute serves the compelling interest of protecting children while being narrowly tailored to target only predators using the internet to solicit children for illegal sex.

12

Finally, Applicant has offered no legal basis for applying the Dormant Commerce Clause to the present statute. However, if the Commerce Clause applies, the statute should be upheld because the burden the statute places on commerce, if any, does not outweigh the legitimate local interest in protecting children from sexual solicitation.

## I.    RESPONSE TO POINT OF ERROR ONE

The remaining subsections of Texas Penal Code § 33.021 should be upheld under a rational basis standard of review, as they restrict unprotected criminal conduct rather than constitutionally protected speech. Moreover, the statute is narrowly tailored to serve a compelling governmental interest.

## Standard of Review

A court reviewing the constitutionality of a statute must first determine what standard of review applies.  The standard of review dictates who holds the burden of proof and how high that burden rests.  The party challenging the statute—here, Applicant—normally carries the burden to establish unconstitutionality because statutes are typically presumed valid. *Ex parte Lo*, 424 S.W.3d at 14-15; *Maloney*, 294 S.W.3d at 626 (citing *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). Generally, if there is a reasonable construction that renders the statute constitutional, the court must uphold it. *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. 1979).

Furthermore, Applicant must meet a higher burden, as he is challenging the facial constitutionality of (c) and (d) of § 33.021, rather than

its constitutionality as applied. An applicant challenging the validity of a statute on its face must show the statute is unconstitutional in every application. *United States v. Salerno*, 481 U.S. 739, 745 (1987). To meet this heavy burden, Applicant must show that no set of circumstances exist under which the statute is valid. *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992).

## A. Strict Scrutiny Applies to Laws Restricting Speech, Not Conduct

A "strict scrutiny" standard of review is inappropriate here because it applies to statutes that regulate speech solely based on content. If the statutory provision regulates speech solely due to content, then the statute will be "presumed invalid," and the State must rebut that presumption. *Ex Parte Lo*, 424 S.W.3d at 15. By contrast, if the statute punishes conduct instead of speech, the courts use a "rational basis" standard of review. This means the court must review the statute *de novo* with the presumption that the law is valid, and the sole concern is whether the statute has a rational relationship to a legitimate state purpose. *Ex Parte Lo*, 424 S.W.3d at 14-15. *See Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

15

## B.  Subsection (b) Regulated Speech,

## but Subsection (c) Regulates Conduct

Applicant argues that subsection (c) regulates speech and must be examined under the strict scrutiny standard; however, the Texas Court of Criminal Appeals clearly stated subsection (c) regulates conduct instead of speech. *Ex Parte Lo*, 424 S.W.3d at 15-16.  Applicant tries to categorize both the constitutional and unconstitutional subsections of § 33.021 together and claims they both regulate constitutionally protected speech. However, when the Court examined § 33.021 in *Ex Parte Lo*, the Court made an adamant distinction between subsection (b), which unconstitutionally sought to regulate speech based solely on content, and subsection (c), which constitutionally sought to regulate criminal conduct. *Ex Parte Lo*, 424 S.W.3d at 15-16.

The plain text of the statute demonstrates the distinction between speech and conduct.  Subsection (b) prohibits communicating in a sexually explicit manner with a minor or distributing sexually explicit material to a minor.  Tex. Pen. Code Ann. § 33.021(b) (Vernon 2012).  The content of the communication, rather than the purpose for which it was done, was key. As Subsection (b) banned communication and distribution of communicative material based solely on its sexually explicit nature, it

16

restricted speech based on content. Subsection (c) instead prohibited using language to commit the criminal conduct of solicitation. Subsection (c) prohibits a person who knowingly solicits a minor to meet another person with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse. Tex. Pen. Code Ann. § 33.021(c) (Vernon 2012). This subsection seeks to regulate the criminal act of soliciting a minor for sex, regardless of whether the language used to do so is sexually explicit.

The Court in *Lo* found subsection (b)—the "sexually explicit communication" subsection—regulated constitutionally protected speech and did not survive strict scrutiny. Under a strict scrutiny standard, the State must prove that the statute is necessary to serve a compelling state interest and that the statute is narrowly drawn to use the least restrictive means to promote that interest. *Ex Parte Lo*, 424 S.W.3d at 19. The Court found subsection (b) unconstitutional, stating, "The statute bars explicit descriptions of sexual acts, but it also bars any electronic communication or distribution of material that "relates to" sexual conduct. That bar would encompass many modern movies, television shows, and "young adult" books, as well as outright obscenity, material harmful to a minor, and child pornography." *Ex Parte Lo*, 424 S.W.3d at 17-20. The Court found that

17

while protecting children from sexual exploitation is a compelling state interest, subsection (b)'s prohibition on communication prohibited substantial innocent speech as well, and thus, was not narrowly tailored to promote that interest.

## C. Subsection (c) Restricts Criminal Solicitation

The Texas Court of Criminal Appeals distinguished subsection (c)—the "solicitation" subsection—from (b) by stating it properly prohibits the conduct of soliciting a child for illegal activity. *Ex Parte Lo*, 424 S.W.3d at 16. Applicant essentially claims that since both subsections can be violated by using words, they both must be "speech" for the purposes of a First Amendment analysis. However, the Court soundly rejected that reasoning, stating, "Thus, it is the conduct of requesting a minor to engage in illegal sexual acts that is the gravamen of the offense." *Id.* The solicitation law does not regulate the nature or type of speech a defendant uses to communicate with a minor; rather, the law prohibits defendants from attempting to procure a child for sex through the internet, no matter the content of language used. Statutes seeking to regulate conduct fall under the "rational basis" standard.

Furthermore, criminal solicitation falls into a category of speech outside the realm of First Amendment constitutional protection. Applicant

argues that the Court should bypass the strict scrutiny standard altogether and solely apply a categorical approach to determine constitutionality of the statute. If the court were to do so, the statute would still stand because criminal solicitation has long fallen outside the hallows of constitutionally protected speech. The Texas Court of Criminal Appeals, referring to subsection (c) stated, "Such solicitation statutes exist in virtually all states and have been routinely upheld as constitutional because "offers to engage in illegal transactions [such as sexual assault of a minor] are categorically excluded from First Amendment protection." *Ex parte Lo*, 424 S.W.3d at 16; citing *United States v. Williams*, 553 U.S. 285, 297 (2008).

The United States Supreme Court has traditionally held that certain types of speech are categorically unprotected by the First Amendment. In *Chaplinsky v. State of New Hampshire*, the Court held, "…it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such

utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 571-572 (1942). Essentially, words that are used to incite criminal acts, such as solicitation, are traditionally unprotected.

The United States Supreme Court expounded on how this might apply to crimes against children when it reviewed an anti-pornography statute in *New York v. Ferber.* The Court stated, "When a definable class of material, such as that covered by § 263.15, bears so heavily and pervasively on the welfare of children engaged in its production, we think the balance of competing interests is clearly struck and that it is permissible to consider these materials as *without the protection of the First Amendment.*" (Emphasis added). *New York v. Ferber*, 458 U.S. 747, 763-764 (1982). Clearly, certain types of speech, particularly expression used to facilitate crimes against children, fall into a category unprotected by the United States Constitution.

The Texas courts, too, have historically found certain types of speech unprotected. Solicitation of prostitution, bribery, and extortion have all been found to be speech without constitutional protection, as they constitute

20

criminal conduct.  See *Frieling v. State*, 67 S.W.3d 462, (Tex. App.—Austin 2002, pet. ref'd.); *Sanchez v. State*, 995 S.W.2d 677, 688 (Tex. Crim. App. 1999).  In *Ex Parte Thompson*, 442 S.W.3d 325, 338 (Tex. Crim. App. 2014), the Texas Court of Criminal Appeals explained the basic reasoning behind what merits constitutional protection versus what does not, stating, "When the intent is to do something that, if accomplished, would be unlawful and outside First Amendment protection, such as the intent to threaten or intimidate, such an intent might help to eliminate First Amendment concerns."  Texas Penal Code § 33.021 (c) specifically requires the defendant have "the intent that the minor will engage in sexual contact."  Tex. Pen. Code Ann. § 33.021(c) (Vernon 2012).  Under Texas law, it is unlawful for a minor to engage in sexual conduct with an adult. Tex. Pen. Code Ann. §§ 21.02, 21.11, 22.011, 22.021 (Vernon).  Therefore, the unlawful intent required by the statute eliminates the First Amendment protection concerns the Applicant attempts to raise.

### D.  Subsection (d) Does Not Change the Standard of Review

Subsection (d)'s addendums, when read in context with subsection (c), do not change the applicable standard of review.  Applicant argues that subsection (c) does not criminalize solicitation when read in conjunction with subsection (d).  Subsection (d)(1) states that it is not a defense if a

21

meeting did not occur, subsection (d)(2) states that it is not a defense if the actor did not intend for a meeting to occur, and subsection (d)(3) states it is not a defense if the actor is engaging in fantasy at the time of the offense. Tex. Pen. Code Ann. § 33.021(d) (Vernon 2012). The court in *Zavala* directly rejected the claim that any of these three subsections significantly altered subsection (c), but subsection (d)(3) will be discussed in greater depth during the State's analysis on overbreadth. Regarding subsections (d)(1) and (d)(2), the *Zavala* court found that the crime under subsection (c) is committed and completed at the time of the actual internet solicitation; therefore, when read in context, subsections (d)(1) and (d)(2) apply to a defendant's conduct and mental state *after* the offense was committed, not at the time of the solicitation. *Zavala*, 421 S.W.3d at 232.

By examining the legislative history, the *Zavala* court reasoned that rather than negating the intent requirement of subsection (c), subsections (d)(1) and (d)(2) merely prevent the defendant from using his intent and actions *after* the crime as a defense. The statute explicitly states that subsection (d)(3) applies to the mental state *during* the commission. Tex. Pen. Code Ann. § 33.021(d) (Vernon 2012). This contrasts with (d)(1) and (d)(2). A plain reading of subsection (d)(1) shows it applies to whether a meeting actually occurred after the solicitation took place. *Id.* As the

22

legislature chose not to apply the same at-the-time-of-the-offense language to (d)(2) that it applied to (d)(3), (d)(2) instead can be read along with (d)(1) to apply to what occurs after the elements of the offense have already been completed. Therefore, subsection (d)(2) does nothing to alter or negate subsection (c)'s intent requirement.

Subsection (c), along with subsection (d), can best be analogized to the law against solicitation for prostitution. The law against prostitution, Texas Penal Code § 43.02(a), reads, in part, that a person commits a crime when he or she knowingly, "offers to engage, agrees to engage, or engages in sexual conduct for a fee" or knowingly "solicits another in a public place to engage with the person in sexual conduct for hire." Tex. Pen. Code Ann. § 43.02 (Vernon 2012). Similarly, subsection (c) of the online solicitation statute requires a defendant to knowingly make an offer, or solicitation, to a minor to engage in sexual conduct. Tex. Pen. Code Ann. § 33.021(c) (Vernon 2012). Under the prostitution statutue, the State could either charge that a defendant offered, agreed, or solicited the illegal sexual conduct, or the State could charge the defendant actually engaged in the sexual conduct. Whether the State charged the defendant with solicitation or with actually engaging in prostitution created an enormous difference in the State's burden of proof.

23

In *Cardenas v. State*, the Texas Court of Criminal Appeals discussed this crucial distinction. The Court explained, "The information reflects that appellant was charged with "knowingly offer and agree" to engage in sexual conduct, to-wit: sexual contact—a type of sexual conduct. The intent that must accompany future sexual contact need not accompany the offer or agreement to engage in sexual conduct." *Cardenas v. State*, 640 S.W.2d 291, 292 (Tex. Crim. App. 1982). The Court elaborated, "If appellant had been charged with *engaging* in sexual contact instead of with *offering* or *agreeing* to engage in sexual contact, *Victory,* supra, would be controlling because "with intent to arouse or gratify the sexual desire of" some person would be an accompanying mental state to the act alleged." In *Cardenas*, then, the State merely had to prove the mens rea necessary to make the offer, and the State did not have to prove the elements, and mens rea, of actually committing the sexual act.

Subsections (d)(1) and (d)(2) essentially codify this same concept as it applies to the Online Solicitation statute. The State can charge a defendant with Online Solicitation under § 33.021, or, if the defendant engaged in actual illegal sexual contact, the State could charge the defendant under sections of the penal code covering the acts committed. If the State charged the defendant with engaging in actual sexual abuse, the

24

State would have to prove up the requisite mens rea for said abuse under that statute. On the other hand, if the defendant is solely charged with solicitation, subsections (d)(1) and (d)(2) put a defendant on notice that the State will not have to prove anything at all regarding the defendant's intent or conduct after the solicitation has occurred; rather the State will meet its burden merely by proving the defendant intended to engage in the solicitation, regardless of what happened after the fact.

### Alternatively, Any Unconstitutional Portions of Subsection (d) Should Be Struck

If the court were to find that any portion of subsection (d) could not be read consistently with subsection (c), then legislative intent is best served by upholding the constitutionality of subsection (c) and striking out any potentially inconsistent subsections. The legislative intent behind § 33.021 was to permit law enforcement officers to find and catch sexual predators before the predator makes actual contact with, and harms, a child. *See* Criminal Justice Comm., Senate Research Ctr., Bill Analysis, Tex. H.B. 2228, 79th Leg., R.S. (July 27, 2005). The Texas Court of Criminal Appeals addressed § 33.021, saying, "Looking at the present statute, the compelling interest of protecting children from sexual predators is well served by the solicitation-of-a-child prohibition in subsection (c)." *Ex*

25

*Parte Lo*, 424 S.W.3d at 23.  Should any impermissible conflict be found, the court should uphold subsection (c), which properly serves the legislative interest.

Arguments and Authorities

### E.  Section (C) Survives Rational Basis Review

Subsection (c) of § 33.021 survives constitutional analysis under a Rational Basis standard of review.  Subsection (c) prohibits conduct that has no First Amendment free speech protection; therefore, the court must analyze it *de novo* under a "rational basis" standard of review and presume the statute is valid.  *Ex Parte Lo*, 424 S.W.3d at 14; *Maloney*, 294 S.W.3d at 626.  If a reasonable construction exists that renders the statute constitutional, the court must uphold it.  *Ely*, 582 S.W.2d 419; *Tarlton v. State*, 93 S.W.3d 168, 175 (Tex.App.—Houston [14th Dist.] 2002, pet. ref'd); *Duncantell v. State*, 230 S.W.3d 835, 843 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).

The "rational basis" standard of review places the burden on the Applicant, not the State.  Applicant expresses concern that an adult engaging in innocent roleplay could feasibly be targeted under the law.  Brief for Appellant, at 5-6.  However, "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to

26

render it susceptible to an overbreadth challenge." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 800 (1984). The presumption of validity means that to prevail, Applicant must prove that subsection (c) could never be constitutionally applied to any defendant under any set of facts or circumstances. *State v. Rosseau,* 396 S.W.3d 550, 557 (Tex. Crim. App. 2013); *Santikos v. State,* 836 S.W.2d 631, 633 (Tex. Crim. App. 1992). Applicant provided no evidence or argument to that effect.

Texas courts have already determined that subsection (c) has a rational relationship to a legitimate state purpose. As our First Court of Appeals stated, "The prevention of sexual exploitation and abuse of children addressed by the Texas online solicitation of a minor statute constitutes a government objective of surpassing importance." *Maloney,* 294 S.W.3d at 628; citing *New York v. Ferber,* 458 U.S. 747, 773 (1982); *In re Shaw,* 204 S.W.3d 9, 15 (Tex. App.—Texarkana 2006, pet. ref'd.); *People v. Smith,* 347 Ill. App. 3d 446 (Ill. App. Ct. 2004). The Court of Criminal Appeals, referring to § 33.021(c), stated, "Looking at the present statute, the compelling interest of protecting children from sexual predators is well served by the solicitation-of-a-child prohibition in subsection (c)." *Ex Parte Lo,* 424 S.W.3d at 23. Subsection (c), which

27

penalizes soliciting minors for illegal sex acts, clearly has a rational relationship to the legitimate state purpose of protecting children from sexual exploitation and abuse.

### F. Texas Penal Code § 33.021 Is Not Overly Broad

Subsection (c) of Texas Penal Code § 33.021 triumphs over any overbreadth argument. Our First Court of Appeals has already upheld the facial constitutionality of subsection (c) against a First Amendment-based overbreadth challenge, and the Court of Criminal Appeals applauded the reasoning. *Maloney*, 294 S.W.3d at 625–29; *Ex Parte Lo*, 424 S.W.3d at 15-16. A statute is impermissibly overbroad if, in addition to prohibiting acts that may be constitutionally prohibited, it includes speech or conduct protected by the First Amendment. *Bynum v. State*, 767 S.W.2d 769, 772 (Tex. Crim. App. 1989); see also *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982). As discussed above, solicitation of another to perform a criminal act is not speech protected by the First Amendment. *Williams*, 553 U.S., at 297. As subsection (c) only prohibits speech or conduct that is unprotected by the First Amendment, it cannot run afoul of the overbreadth doctrine.

Moreover, as subsection (c) regulates conduct, not mere speech, Applicant must meet an even heavier burden to prove the statute is

overbroad. As the First Court of Appeals pointed out, "When conduct and not merely speech is involved, any overbreadth of a statute must "not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615; *Maloney*, 294 S.W.3d at 627. Applicant alleges that subsection (c) criminalizes a substantial amount of constitutionally protected speech by forbidding fantasies. Brief for Appellant, at 11-12. However, this argument has been considered and rejected by both the First and Fourth Courts of Appeals.

Subsection (c) is narrowly drawn to regulate those who would use the internet to obtain minor victims for sexual misconduct. The "substantial amount of protected speech" Applicant claims will be prohibited by the current statute is fantasy role-playing, or "ageplay." Brief for Appellant, at 13. The *Maloney* court examined this reasoning and rejected it. *Maloney* succinctly stated, "More importantly, § 33.021 does not make it a criminal offense simply to engage in a fantasy, as appellant seems to suggest. Rather, § 33.021 unambiguously provides that a person is prohibited from knowingly soliciting a minor over the internet, or through other electronic media, to meet him or another person with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with him or another person." Tex. Penal Code Ann. § 33.021(c); *Maloney,*

29

294 S.W.3d at 628-629. The statute does not criminalize the act of fantasy unless a defendant is engaging in fantasy while also intending to solicit a minor for sex.

### 1. The Statute is Narrowly Tailored

First, the statute's definition of "minor" is narrowly drawn to serve the State's interest. Applicant argues that the statute defines "minor" too broadly because it includes "an individual who represents himself or herself to be younger than 17 years of age." Tex. Pen. Code Ann. §33.021(a)(1)(A) (Vernon 2012). Applicant claims this would penalize adults who are merely engaging in a mutual fantasy with other adults. Brief for Appellant, at 13-15. However, a plain reading of the statute would not criminalize two adults who agree that one of them will pretend to be a minor during their conversations. In a truly innocent "ageplay" scenario, the person solicited would first represent herself to be an adult but then agree to pretend to be a minor. By contrast, in an illegal solicitation, the person solicited has represented themselves as someone under the age of seventeen.

The statute, as written, prevents a defendant from relying on the defense that even though a minor represented herself as a child, he thought she was older. The reasoning behind this is analogous to the

reasoning behind strict liability laws regarding sexual abuse. In *Scott v. State*, the First Court of Appeals explained why statutory rape laws are constitutional, stating, "The statute rationally furthers a legitimate governmental interest. It protects children from sexual abuse by placing the risk of mistake as to a child's age on an older, more mature person who chooses to engage in sexual activity with one who may be young enough to fall within the statute's purview." *Scott v. State*, 36 S.W.3d 240 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd.); citing *United States v. Ranson*, 942 F.2d 775, 776-77 (10th Cir. 1991). Likewise, here, a defendant bears the risk when soliciting a person who has clearly represented himself or herself to be younger than seventeen.

Next, the potential, if any, for abuse of the statute to restrict innocent behavior remains exceptionally low. The instant issue can be analogized again to the Texas law prohibiting solicitation of prostitution. In *Tisdale v. State*, the San Antonio Court of Appeals faced a similar overbreadth challenge to the prostitution statute. There, the defendant listed five separate innocent interactions which could theoretically be prosecuted under the Texas prostitution law. *Tisdale v. State*, 640 S.W.2d 409, 414 (Tex. App.—San Antonio 1982, pet. ref'd.). The court found it persuasive that the defendant was unable to provide any cases

31

demonstrating an actual abuse of the statute, and the court held it was clearly possible to narrowly interpret the statute in order to protect innocent interests. *Id.* Likewise, Applicant has failed to provide any case-specific examples of overreaching by the State to prosecute harmless fantasy between adults.

Finally, Subsection (d)(3), when read in proper context with subsection (c), does not unnecessarily regulate pure fantasy behavior. The Fourth Court of Appeals in *Zavala* found Applicant's "fantasy" argument unpersuasive. Whether or not "ageplay" is prevalent is irrelevant, as the statute does not criminalize adults seeking to sexually pretend with other adults. Subsection (c) penalizes adults knowingly seeking children for sexual activity. The defendant in *Zavala* attempted to argue that by disallowing fantasy as a defense, the legislature had criminalized engaging in fantasy. *Ex Parte Zavala*, 421 S.W.3d at 231-232. The *Zavala* court responded, "The crime of soliciting a minor under § 33.021(c) is committed, and is completed, at the time of the request, i.e., the solicitation. The requisite intent arises within the conduct of soliciting the minor, and must exist at the time of the prohibited conduct of solicitation." *Ex Parte Zavala*, 421 S.W.3d at 232. That mens rea of knowing solicitation of a minor must exist at the time of the solicitation; if it does not, then the crime has not

been committed. Again, the fact that a defendant was also engaged in fantasy at the time of the solicitation will not excuse him. The statute is sufficiently limited to target those who are actively seeking children for sexual abuse.

As *Maloney*, *Lo* and *Zavala* clearly held, subsection (c) is narrowly tailored to protect children from sexual abuse, and subsection (d) merely provides that an accused who has actively sought to solicit a child for sex may not defend against the charge by later arguing that he changed his mind or was just engaging in a fantasy. Tex. Pen. Code Ann. § 33.021(d) (Vernon 2012); *Maloney*, 294 S.W.3d at 628-629; *Ex Parte Lo*, 424 S.W.3d at 16-17, 21; *Ex Parte Zavala*, 421 S.W.3d at 232. The First Court of Appeals concluded that any slight potential for overbreadth of § 33.021 is not prohibitive when judged in relation "to its plainly legitimate sweep." *Maloney*, 294 S.W.3d at 628. A constitutional overbreadth challenge cannot prevail.

### 2. The Statute Serves a Compelling Governmental Interest

The protective sweep of § 33.021 (c) promotes a state interest that far outweighs the potential for improper application. Applicant has conceded that the online solicitation statute promotes a compelling state interest. Brief for Appellant, at 17. In *New York v. Ferber*, the United

States Supreme Court explained that a statute which could prohibit constitutionally protected speech or conduct can still be upheld when the statute's legitimate reach dwarfs all potentially impermissible applications. *New York v. Ferber*, 458 U.S. 747, 773-774 (1982).

The public interest in protecting children from being solicited online for sexual abuse is clearly high. The defendant in *Frieling v. State* argued that the Texas prostitution statute was overbroad because it swept innocent conduct, such as joking or merely pretending to agree to prostitution under its umbrella of prohibition. *Frieling v. State*, 67 S.W.3d 462, 473-474 (Tex. App.—Austin 2002, pet. ref'd.). However, the *Frieling* court found that the public interest in restricting prostitution substantially outweighed the defendant's overbreadth concerns. Likewise, Applicant argues that the present statute fails because someone who merely pretends to solicit minors could be prosecuted under the present statute. The governmental interest in protecting children from sexual abuse certainly equals, and likely far exceeds, the governmental interest in regulating prostitution.

Likewise, the United States Supreme Court in *New York v. Ferber*, stated the mere potential for impermissible application alone will not make a statute facially invalid when the governmental interest is high. *Ferber*, 458 U.S. at 773–74. The *Ferber* case examined whether New York's child

pornography statute was overbroad. The court noted that the statute could hypothetically restrict innocent images such as medical and social texts; however the court found that the interest of protecting children from abuse completely dwarfed any potentially impermissible application. *Ferber*, 458 U.S. at 773.

In *People v. Smith,* the Illinois Appellate Court, Third District, upheld a similar indecent solicitation of a child statute, rejecting the overbreadth argument. *Smith*, 347 Ill. App. 3d 446. The *Smith* court concluded that while some misapplication of the statute could potentially occur, the legitimate goal of the statute—to prevent sexual exploitation and abuse of children—far surpassed any potential unlawful applications. *Id.* The court found that situations where the State may abuse the statute to try to punish innocent conduct would be exceedingly rare. *Id.* Likewise, Applicant here has failed to show that the rare potential for improper application outweighs the substantial State interest involved.

## II.   RESPONSE TO POINT OF ERROR TWO

The remainder of Texas Penal Code §33.021 survives any vagueness challenge, as the plain meaning of the word "solicitation" in the statute is facially clear.

## A. Applicant Cannot Raise a New Vagueness Ground

## on Appeal

Texas Penal Code §33.021(c) has survived past challenges for vagueness. *Ex Parte Zavala*, 421 S.W.3d at 232; *Maloney*, 294 S.W.3d at 628-629. To find a statute is unconstitutionally vague, the court must find that men of common intelligence must necessarily guess at the statute's meaning. *Connally v. General Construction Co.*, 269 U.S. 385, 391(1926). See *Grayned v. City of Rockford*, 408 U.S. 104, 108—114, (1972); *Colten v. Kentucky*, 407 U.S. 104, 110—111 (1972); *Cameron v. Johnson*, 390 U.S. 611, 616 (1968). Applicant's sole argument in his brief to the trial court was a summary conclusion that men of ordinary intelligence must guess at the meaning of the word "solicitation." Application for Writ of Habeas Corpus and Brief in Support, at 7-8.

Applicant now argues the entirety of Texas Penal Code §33.021 is vague due to Applicant's perceived inconsistencies in the meanings of subsection (c) and subsection (d). Brief for Appellant, at 18-20. Texas Rule of Appellate Procedure 33.1(a) requires Applicant to give the grounds for his complaint to the trial court with sufficient specificity to make the trial court aware of the complaint in order to preserve his grounds for appellate

36

review. Tex. R. App. P. 33.1 (Vernon). Applicant cannot now raise new grounds for vagueness that he did not raise at the trial court level. *Valdez v. Valdez,* 930 S.W.2d 725 (Tex. App.—Houston [1st Dist.] 1996, no pet.); *Wren v. Texas Employment Com'n,* 915 S.W.2d 506 (Tex. App.—Houston [14th Dist.] 1995, no pet). Applicant's present objection must comport with his former objection at trial in order to be preserved for review. *Rothstein v. State,* 267 S.W.3d 365 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd.). At trial, Applicant solely objected to the plain meaning of one word. Now, he objects to multiple subsections on the ground that they cannot be read consistently. This new objection was not preserved.

## B. Subsections (c) and (d) Are Not Impermissibly Vague

Alternatively, Texas courts have addressed similar concerns before in other solicitation offenses and have had no trouble interpreting the State's burden. The meaning of solicitation in Texas Penal Code §33.021 does not differ substantially from any of Texas's other solicitation offenses. Applicant claims that the court's reasoning in *Zavala* only illustrates the vagueness within the statute. Brief for Appellant, at 18-20. However, Applicant fundamentally misinterprets the distinction made by the *Zavala* court—a distinction made frequently regarding solicitation crimes. The defendant's actions and intent after the solicitation occurred are irrelevant.

The State need only prove the defendant possessed the requisite mens rea when the solicitation occurred.

In all cases that involve an offer to commit criminal activity, there are two mens reas potentially at issue: the mens rea necessary to commit the solicitation, and the mens rea to commit the actual crime being solicited. The State must prove the former, not the latter. For example, Texas courts have held that the offense of bribery is completed when the offer or agreement is made, and it is no defense that the action for which one was bribed was never undertaken. *Rath v. State*, 33 S.W. 229 (Tex. Crim. App. 1895); *Aaron v. State*, 275 S.W.2d 693, 695 (Tex. Crim. App. 1955); *Cerda v. State*, 750 S.W.2d 925, 927 (Tex. App.—Corpus Christi 1988, pet. ref'd.). Likewise, the Texas Penal Code Statute for Criminal Solicitation states it is no defense if the actor could not have actually committed the crime herself, or if the person she solicited was not criminally responsible for the crime. Tex. Pen. Code Ann. § 15.03(c) (Vernon 2012). In both of these examples, the State must prove the solicitation, or offer, but the State is not required to prove an additional mens rea or commission after the fact.

Texas courts have treated solicitation for prostitution cases similarly. In *Mattias v. State*, 731 S.W.2d 936, 937 (Tex. Crim. App. 1987), the Texas Court of Criminal Appeals held that a person could be guilty of knowingly

offering to engage in prostitution even if she does not possess the intent to actually consummate the sexual conduct. The State must prove the defendant knowingly offered to consummate, but the State need not prove that the defendant actually intended to consummate the act after the solicitation was complete. Likewise, subsections (c) and (d) of Texas Penal Code § 33.021 can be read to give a similar meaning. At the time of the solicitation, the defendant must knowingly solicit the minor with the intent that the minor will engage in sexual conduct. However, it is no defense if there was no consummation or if the defendant lacked intent to consummate after the solicitation occurred.

Previous attacks on subsections (c) and (d) for vagueness have failed. The defendant in *Maloney* unsuccessfully argued that the statute was vague, claiming it could be read to prohibit lawful fantasy as well as true solicitation. The *Maloney* court stated that the solicitation portion of §33.021(c) was unambiguous. *Maloney*, 294 S.W.3d at 628-629. Later, the defendant in *Zavala* argued that the internal language within the statute left confusion as to the intent required for solicitation. *Ex Parte Zavala*, 421 S.W.3d at 231. The Fourth Court of Appeals found the plain language meaning of solicitation was sufficiently clear. *Ex Parte Zavala*, 421 S.W.3d

39

at 231-232. The plain meaning of "solicitation" within § 33.021 (c) survives any challenge for vagueness.

## III. RESPONSE TO POINT OF ERROR THREE

The Dormant Commerce Clause does not apply to § 33.021. Alternatively, the statute survives the Dormant Commerce Clause balancing test, as any potential burden on commerce does not outweigh the legitimate local interest in preventing solicitation of minors for illegal sexual acts.

### A. The Dormant Commerce Clause Does Not Apply

Applicant has presented no law stating the Dormant Commerce Clause applies to online solicitation of a minor; in fact, the case Applicant cited as persuasive authority does not address the issue at all. The court in *American Libraries Association v. Pataki*, specifically excluded the issue of soliciting or luring children on the internet. The court plainly noted, "[P]laintiffs do not challenge the sections of the statute that criminalize ... and prohibit adults from luring children into sexual contact by communicating with them via the internet." *Am. Libraries Ass'n v. Pataki*, 969 F. Supp. 160, 179 (S.D.N.Y. 1997). Contrary to Applicant's assertions, that court never indicated the dormant Commerce Clause should be applied to statutes prohibiting solicitation of minors on the internet.

40

Texas Penal Code § 33.021 does not violate the dormant Commerce Clause. Applicant claims the statute violates the clause by attempting to place regulations on all internet users. Brief for Appellant, at 20. However, attempting to regulate internet activity is not the proper legal test that must be applied to a state statute.

To evaluate a state statute under the dormant Commerce Clause, a court must first determine whether the statute facially discriminates against interstate commerce. *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 99 (1994). If the statute treats commerce within the state differently from commerce between states, then the statute is deemed "virtually *per se* invalid." *Id.* If it does not, the court must apply the balancing test from *Pike v. Bruce Church* to determine whether the local benefits outweigh the burdens on interstate commerce. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Under the *Pike* test, the court must determine if there is a legitimate local public interest and whether "the burden imposed ... is clearly excessive in relation to the putative local benefits." *Id.*

## B. Subsection (c) Does Not Restrict Commerce

The plain language of Texas Penal Code § 33.021 does not address commerce at all. Tex. Pen. Code Ann. § 33.021 (Vernon 2012).

Commerce is the exchange of goods and services on a large scale involving transportation between cities, states and nations. *Black's Law Dictionary* (9th ed. 2009), *available at* Westlaw BLACKS. Appellant makes no suggestion as to how prohibiting solicitation of minors for sex falls under the heading of commerce. Even if the statute did touch the broadest possible concept of commerce, Applicant has given no example of how Texas Penal Code § 33.021 treats those using the internet within the state to solicit children differently from those outside of the state. As the statute does not treat commerce within the state differently than commerce between the states, the *Pike* test applies.

## C. Texas Penal Code § 33.021 Passes the Pike Test

The state in the present case has not only a legitimate local public interest, but a compelling interest in protecting children from sexual predators, and the Texas Court of Criminal Appeals has already held that interest is well served by the prohibition in subsection (c). *Ex Parte Lo*, 424 S.W.3d at 23. Further, there is neither evidence nor argument from Applicant that any purported burden on interstate commerce would be clearly excessive as balanced against the local benefits of protecting the children of Texas from sexual abuse.

Finally, the Dormant Commerce Clause is a "judge-made" doctrine and Supreme Court Justice Clarence Thomas, in a concurring opinion, noted of the so-called Dormant Commerce Clause that it, "has no basis in the text of the Constitution, makes little sense, and has proved virtually unworkable in application, and, consequently, cannot serve as a basis for striking down a state statute." *McBurney v. Young*, 133 S. Ct. 1709, 1721 (2013).

## IV.   CONCLUSION

Soliciting minors for sexual abuse has historically fallen into a category wholly outside the protections of the First Amendment of the Constitution.  Texas Penal Code § 33.021 (c) serves the compelling state interest of protecting children from sexual abuse while being narrowly drawn to meet those needs.  The subsection is neither overbroad, nor vague, and it is not prohibited by the Dormant Commerce Clause.  The State moves the court to uphold the constitutionality of the statute and DENY Applicant any and all relief.

## V.   PRAYER

Appellee respectfully prays this Honorable Court to deny Applicant's

application for habeas relief.

Respectfully submitted,

Brandy Robinson
Texas Bar No. 24051688
Austin County Courthouse
One East Main Street, 3rd Floor
Bellville, Texas 77418
(979) 865-5933

## CERTIFICATE OF COMPLIANCE

I, Brandy Robinson, hereby certify that in compliance with Rule of Appellate Procedure 9.4(i)(1), according to Microsoft Word's word counting function, this document contains contains 8,175 words.

Date: 2-5-15

_Brandy Robinson_
Brandy Robinson

## CERTIFICATE OF SERVICE

I, Brandy Robinson, hereby certify that a true and correct copy of the foregoing instrument has been served upon the Appellant by sending the same through the United States mail to his attorney, Mark Bennett, via email at mb@ivi3.com.

Date: 2-5-15

_Brandy Robinson_
Brandy Robinson